MARYLAND CASUALTY COMPANY, Appellee

v.

ODYSSEY CONTRACTING CORPORATION and Odyssey Painting Company, Inc., Appellants.

Superior Court of Pennsylvania.

Argued March 30, 2005.

Filed Feb. 9, 2006.

Reargument Denied April 17, 2006.

Robert J. Amelio, Pittsburgh, for appellants.

Sandy B. Garfinkel, Pittsburgh, for appellee.

Before: HUDOCK, POPOVICH and JOHNSON, JJ.

HUDOCK, J.

¶ 1 This is an appeal from an order that granted judgment on the pleadings. We affirm.

¶ 2 Appellee, Maryland Casualty Company (Maryland Casualty), initiated the action underlying this appeal by filing a complaint in the court of common pleas on May 7, 2002. Maryland Casualty alleged that Appellants (Odyssey Contracting Corporation and Odyssey Painting Company, Inc.) were in breach of contract for failure to pay all of the premiums owed for workers' compensation insurance coverage. Specifically, Maryland Casualty sought damages in the amount of $140,528.00 plus interest from June 28, 2000, and costs. Appellants filed a counterclaim asserting that Maryland Casualty intentionally and knowingly applied an improper rate classification to calculate the exposures and to inflate the amount of premiums due.

¶ 3 The matter proceeded through discovery until August of 2003, when Maryland Casualty filed a motion for judgment on the pleadings against Appellants. The trial court heard argument and received briefs on the matter. On June 15, 2004, the trial court granted Maryland Casualty's motion. The docket indicates that notice was provided to the parties on June 16, 2004. Appellants filed a motion for reconsideration, which the trial court denied. Appellants' timely notice of appeal was filed on July 14, 2004. Although the trial court did not require Appellants to file a Rule 1925(b) statement, a full trial court opinion has been filed. Appellants present two issues for our consideration:

A. If a worker's compensation insurance policy incorporates more than one rate to distinguish between maritime exposures arising under the Longshore and Harbor Workers Act[1] versus land-based exposures arising under various states' workers' compensation statutes, should the court of common pleas exercise its subject matter jurisdiction to adjudicate a dispute between a policy holder and insurer concerning whether the proper policy rate was selected to calculate the final premium due by the terms of the policy?

B. Assuming arguendo that there was an administrative appeals process to be followed, is the Worker's Compensation Act unconstitutional as it applies to these policyholders for its failure to provide adequate notice of the 12–month limitation to initiate an administrative appeals process?

Appellants' Brief at 4.

¶ 4 As our Supreme Court has explained, appellate review of a trial court's decision to grant or deny judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether there were facts presented which warrant a jury trial. *Travelers Casualty & Surety Company v. Castegnaro*, 565 Pa. 246, 772 A.2d 456, 459 (2001). In conducting this review, we look only to the pleadings and any documents properly attached thereto. *Id.*, 772 A.2d at 459. "Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary." *Id.*, 772 A.2d at 459.

In passing on a challenge to the sustaining of a motion for judgment on the pleadings, our standard of review is limited. We must accept as true all well pleaded statements of fact of the party against whom the motion is granted and consider against him only those facts that he specifically admits. We will af-

1. 33 U.S.C. §§ 901–950.

firm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Minnich v. Yost,* 817 A.2d 538, 540 (Pa.Super.2003), *appeal denied,* 573 Pa. 710, 827 A.2d 1202 (2003)

¶ 5 Appellants first argue that the trial court improperly determined that an adequate administrative remedy exists to address their counterclaim that Maryland Casualty applied an incorrect final premium rate when charging for workers' compensation insurance coverage. Appellants assert that the policy issued by Maryland Casualty incorporates more than one rate depending on whether the coverage stems from maritime exposures arising under the Longshore and Harbor Workers Act versus land-based exposures arising under other statutory mandates. The trial court found that it lacked subject matter jurisdiction to adjudicate Appellants' counterclaim because Appellants failed to seek the appropriate administrative remedy before the Pennsylvania Compensation Rating Bureau. Trial Court Opinion, 6/15/04, at 4.

¶ 6 Our Supreme Court has held that "[i]t is fundamental that prior to resorting to judicial remedies, litigants must exhaust all the adequate and available administrative remedies." *County of Berks, ex rel. Baldwin v. Pennsylvania Labor Relations Board,* 544 Pa. 541, 678 A.2d 355, 360 (1996). The failure to pursue a statutory remedy may be raised at any point in a proceeding by the parties or by the court *sua sponte* because such failure creates a jurisdictional defect. *Muir v. Alexander,* 858 A.2d 653, 660 (Pa.Cmwlth. 2004). Section 1504 of the Statutory Construction Act of 1972 provides that in all cases where a statutory remedy is provided or a duty is enjoined by any statute, the statutory remedy shall be strictly pursued

rather than a remedy at common law. 1 Pa.C.S.A. § 1504. A court is without power to act until statutory remedies have been exhausted. *Muir,* 858 A.2d at 660. Indeed, as this Court has explained, the courts of this Commonwealth have consistently held that when a remedy is provided by an act of assembly, the directions of the legislation must be strictly pursued and such remedy is exclusive. *Panea v. Isdaner,* 773 A.2d 782, 789 (Pa.Super.2001) (*en banc*), *aff'd sub nom. Bell v. Slezak,* 571 Pa. 333, 812 A.2d 566 (2002).

¶ 7 "Even where a constitutional question is presented, it remains the rule that a litigant must ordinarily follow statutorily-prescribed remedies." *Muir,* 858 A.2d at 660. "The additional element required to confer equitable jurisdiction is either the absence of a statutorily-prescribed remedy or, if such a remedy exists, then a showing of its inadequacy in the circumstances." *Id.* (quoting *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County,* 459 Pa. 268, 328 A.2d 819, 823 (1974)). Our Supreme Court has explained the rationale for the doctrine that administrative remedies must be exhausted before seeking relief from courts, stating as follows:

> When the Legislature has seen fit to enact a pervasive regulatory scheme and to establish a governmental agency possessing expertise and broad regulatory and remedial powers to administer that statutory scheme, a court should be reluctant to interfere in those matters and disputes which were intended by the Legislature to be considered, at least initially, by the administrative agency.

*Muir,* 858 A.2d at 660 n. 17 (quoting *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791, 793 (1977)). The purpose of the doctrine is to preserve the integrity of the administrative process. *Id.* In deter-

mining whether a litigant will be excused from exhausting administrative remedies, courts must look to whether an adequate administrative remedy exists. *County of Berks,* 678 A.2d at 360. A litigant will be allowed to bypass seeking administrative relief before a state agency if that agency has no mandate to provide the requested remedies. *Id.* However, our Supreme Court has ruled that a litigant cannot be permitted "to circumvent the administrative process where the litigant can achieve full relief in front of the agency but the relief may be granted on bases different from those advocated by the litigant." *Id.*

¶ 8 In the present case, the trial judge has explained why he reached the conclusion that Appellants could have sought the relief they now request had they pursued a timely claim before the Pennsylvania Compensation Rating Bureau (the Bureau). Trial Court Opinion, 6/15/04, at 3–4. The trial court's decision rests, in part, on provisions contained within the Pennsylvania Workers Compensation Manual issued by the Bureau. This manual has been made a part of the certified record and was properly considered by the trial court. *See Graduate Health Systems, Inc. v. Pennsylvania Insurance Department,* 674 A.2d 367, 368 n. 2 (Pa. Cmwlth.1996) (holding that it is proper for a court to take judicial notice of the Workers Compensation Manual if a copy of it has been placed in the original record). We agree with the trial court's reasoning and with its reliance on the provisions of Rule XVI (Appeals From Application of the Rating System Procedure) in the Workers Compensation Manual.

¶ 9 We are cognizant of Appellants' contention that the Bureau has no authority to adjudicate a contracts dispute. While this may be true, it does not alter the fact that the Bureau does have the authority to rule in a dispute over the application of rate classifications in a given case. Pennsylvania Workers Compensation Manual, Rule XVI (C). The courts of common pleas do not acquire authority to grant a remedy within the sole purview of the Bureau merely because the parties to a contracts dispute also dispute a particular insurance rate classification. We agree with the trial court that to hold otherwise would circumvent the administrative remedy established to deal with disputes such as the one between the parties in this case.

¶ 10 Appellants next contend that section 1035.17 of Title 77 provides no notice that there is a twelve-month limitation period for filing an administrative appeal challenging a rate classification. Appellants argue that this lack of notice constitutes a denial of procedural due process. Thus, Appellants assert that section 1035.17 is unconstitutional.

¶ 11 In Pennsylvania, the Attorney General is the Commonwealth officer statutorily charged with defending the constitutionality of all enactments passed by the General Assembly. *City of Philadelphia v. Commonwealth,* 575 Pa. 542, 838 A.2d 566, 583 (2003) (citing 71 P.S. § 732–204(a)(3)). The nature of the constitutional challenge and the opinion of any other state officer make no difference to this requirement. *Id.,* 838 A.2d at 583–84. Notice must be provided to the Attorney General, if the Commonwealth is not a party, whenever a litigant challenges the constitutionality of a statute in any court subject to the Pennsylvania Rules of Civil Procedure. Pa.R.C.P. 235. If the statute continues to be challenged on appeal, the Attorney General must be afforded a separate and additional notice pursuant to Pennsylvania Rule of Appellate Procedure 521. When the constitutionality of an act of the General Assembly is challenged on appeal, the Attorney General stands in representative capacity for, at a minimum,

all non-Commonwealth parties having an interest in seeing the statute upheld. *City of Philadelphia*, 838 A.2d at 584. As such, the Attorney General must be afforded notice of any appeal that raises the alleged unconstitutionality of a statute. *Id.* In this case, the record indicates that Appellants complied with the notice requirements in both the trial court and on appeal.

¶ 12 The next question is whether Appellants are barred from raising their constitutional challenge on the grounds that they did not originally present the claim to the relevant administrative agency. The failure to exhaust administrative remedies is jurisdictional in nature and may be raised by the parties or by a court *sua sponte*. *Brog v. Commonwealth Department of Public Welfare*, 43 Pa.Cmwlth. 27, 401 A.2d 613, 615 (1979).[2] The primary purpose of the exhaustion doctrine is to ensure that claims will be addressed by the body having expertise in the area. *Lehman v. Pennsylvania State Police*, 576 Pa. 365, 839 A.2d 265, 275 (2003). This is particularly true when agency interpretation of relevant statutes or regulations is desirable. *Id.* An exception to this exhaustion doctrine exists to permit a litigant to challenge the constitutionality of a statutory scheme. *Id.* Constitutional challenges are of two kinds: either the challenge assails the statute on its face or it questions the application of the statute in a specific case. *Id.*

In a facial challenge, a party is not required to exhaust administrative remedies because the determination of the constitutionality of enabling legislation is not a function of the administrative agencies thus enabled. Accordingly, fa-

cial challenges to a statute's constitutionality need not be raised before the administrative tribunal to be reviewed by an appellate court; challenges to a statute's application, however, must be raised before the agency or are waived for appellate review.... [R]equiring "as applied" challenges to be heard at the administrative level permits the agency to exercise its expertise and develop the factual record necessary to resolve the claim.

*Id.*, 839 A.2d at 275.

¶ 13 Appellants present a two-fold due process claim, which challenges the manner in which section 1035.17 applies in this specific case but also goes to the validity of the enabling statute itself. The latter claim is not confined to the manner in which the provision was applied in this particular case. We do not have jurisdiction to address Appellants' argument concerning the application and impact of the statute under the specific circumstances of this appeal because that issue was not presented to the administrative tribunal in the first instance. However, to the extent that Appellants challenge the constitutionality of the enabling legislation as a general matter, we conclude that this aspect of the appeal falls within the exception to the exhaustion doctrine and that we have jurisdiction to consider Appellants' argument.

¶ 14 Review of a statute's constitutionality is deferential because there is a strong presumption that an enactment of the General Assembly is constitutionally firm. *Weinberg v. Comcast Cablevision of Philadelphia, L.P.*, 759 A.2d 395, 398 (Pa.Super.2000). Our Supreme Court has

---

**2.** This Court is not bound by decisions of the Commonwealth Court. *Citizens' Ambulance Service Inc. v. Gateway Health Plan*, 806 A.2d 443, 446 n. 3 (Pa.Super.2002), *appeal denied*, 572 Pa. 763, 819 A.2d 546 (2003). However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate. *Id.*

warned that, in keeping with the strong presumption of validity enjoyed by all duly enacted legislation, as well as the need to preserve the delicate balance critical to the proper functioning of a tripartite system of government, courts must exercise restraint when asked to invalidate legislation. *City of Philadelphia*, 838 A.2d at 580. This is particularly true where failure to do so could intrude upon the prerogatives of a coordinate branch of government. *Id.*

¶ 15 An appellant bears a heavy burden to prove that a statute is unconstitutional. *Ieropoli v. AC & S Corporation*, 577 Pa. 138, 842 A.2d 919, 928 (2004). This burden of persuasion rests on the party challenging the statute. *Id.* A statute will be declared unconstitutional only if it clearly, palpably and plainly violates the constitution. *City of Philadelphia*, 838 A.2d at 585. All doubts are to be resolved in favor of a finding of constitutionality. *Commonwealth v. Aponte*, 579 Pa. 246, 855 A.2d 800, 803 (2004), *cert. denied*, 543 U.S. 1063, 125 S.Ct. 886, 160 L.Ed.2d 792 (2005). Pennsylvania courts are duty bound to construe a statute, if at all possible, so as not to render it unconstitutional:

> The "canon of constitutional avoidance" provides that when "a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *See Harris v. United States*, 536 U.S. 545, 555, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909)). Pennsylvania explicitly recognizes this canon by statute in instances where construction of a Pennsylvania statute is at issue. See 1 Pa.C.S. § 1922; *see also Commonwealth v. Ba-*

*vusa*, 574 Pa. 620, 832 A.2d 1042, 1050–51 (Pa.2003).

*MCI Worldcom, Inc. v. Pennsylvania Public Utility Commission*, 577 Pa. 294, 844 A.2d 1239, 1249 (2004).

¶ 16 The crux of Appellant's constitutionality argument is the assertion that, standing alone, the text of section 1035.17 of Title 77 does not afford notice that agency regulations provide only a twelve month time period in which to file a claim pursuant to the statute. We agree with Appellants that section 1035.17 does not give notice, on its face, as to the time period in which a claimant may initiate action. However, we cannot agree that the statute is unconstitutional on that basis.

¶ 17 Section 1035.17 contains the following language:

> **Requests for review; appeals to commissioner**

> (a) Each rating organization and every insurer to which this article applies which makes its own rates shall provide within this Commonwealth reasonable means whereby any person aggrieved by the application of its rating system may be heard in person or by the person's authorized representative on the person's written request to review the manner in which such rating system has been applied in connection with the insurance afforded the aggrieved person. For the purposes of this section, "reasonable means" shall include at least the following:

> (1) A committee to hear the appeals of aggrieved persons which is comprised of an equal number of representatives of employers and insurers.

> (2) If travel is required for the aggrieved person to be heard in person, reimbursement to the aggrieved person for reasonable travel expenses.

(b) If the rating organization or insurer fails to grant or reject the aggrieved person's request within thirty (30) days after it is made, the applicant may proceed in the same manner as if the application had been rejected.

(c) Any party affected by the action of that rating organization or insurer on the request may, within thirty (30) days after written notice of that action, make application in writing for an appeal to the commissioner, setting forth the basis for the appeal and the grounds to be relied upon by the applicant.

(d) The commissioner shall review the application and, if the commissioner finds that the application is made in good faith and that it sets forth on its face grounds which reasonably justify holding a hearing, the commissioner shall conduct a hearing held on not less than ten (10) days' written notice to the applicant and to the rating organization or insurer. The commissioner, after hearing, shall affirm or reverse the action.

77 P.S. § 1035.17. This section does not stand alone and must be read *in pari materia* with all of the related provisions set forth in Chapter 7B of the Workers' Compensation Act, which also deal with insurance rates. *See* 77 P.S. §§ 1035.1–1035.22 (setting forth legislative provisions established to protect policyholders and the public against the adverse effect of excessive, inadequate or unfairly discriminatory rates). In turn, Chapter 7B cannot be viewed in isolation, but must be interpreted in accordance with the provisions of Title 45, sections 1102 *et seq.* (pertaining to legal notices and advertisements of agency rule making and the adoption of regulations by administrative agencies). *See also* 2 Pa.C.S.A. §§ 101–754 (Administrative Law and Procedure); 1 Pa.Code Chapter 7 (setting forth procedures for adoption or change of administrative agency regulations); 1 Pa.Code Chapter 11 (establishing procedures for preparation of notices, rulemaking proposals and unpublished regulations for administrative agencies); 31 Pa.Code § 56.1 (indicating that, with certain exceptions, 1 Pa.Code § 31.1 and 1 Pa.Code Part II (relating to general rule of administrative practice and procedure) apply to proceedings before the Insurance Department).

¶ 18 An administrative agency has the authority to adopt rules with respect to the administration of a statute when the statute specifically empowers the agency to do so. *Bailey v. Zoning Board of Adjustment of the City of Philadelphia,* 569 Pa. 147, 801 A.2d 492, 500 (2002). "Nevertheless, even where a statute does not explicitly provide an agency with rule-making powers, if the agency is directed to operate under the statute, the agency may also create rules concerning its administration of the statute based on its interpretation of the statute." *Id.,* 801 A.2d at 501. It is clear on the face of section 1035.17 that the rating organizations and insurers governed by the statute must establish "reasonable means" to hear grievances and that the insurance commissioner is required, upon request, to review any action taken pursuant to the filing of any such grievance. The fact that rules will be promulgated to effectuate this grievance procedure is implicit in section 1035.17 and the other provisions of Chapter 7B of the Workers' Compensation Law.

¶ 19 Appellants have not cited to any statutory provision or to any case law indicating that implementing legislation must set forth the provisions of any agency rules or regulations established under color of the implementing statutory authority. Nor has our independent research uncovered any such requirement. Rather, an administrative agency is expected to pro-

mulgate all necessary rules in compliance with the relevant notice provisions of Titles 2 and 45, *supra.* Appellants have not challenged the constitutionality of the manner in which the pertinent agency rules were promulgated, nor have they raised a claim that the specific agency **rules** implicated by this appeal operate to deprive all claimants of their due process rights. Appellants contend only that the implementing legislation itself is unconstitutional.

¶ 20 We are sympathetic to Appellants' position that it is unfair that requests for review of insurance rate structures as applied by an insurer are governed by rules that are not readily identifiable and accessible to the general public. While we might like to decide this case differently, we are forced to acknowledge that something that seems "unfair" is not always "unconstitutional." Appellants have not demonstrated that section 1035.17 operates any differently than any other such implementing statute so as to render this particular provision unconstitutional. Thus, Appellants have failed to overcome the presumption that the statute is constitutionally firm.

¶ 21 Order affirmed.